**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 18-290-001 |
| | ) | |
| ELIJAH WINCHESTER, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Pending before the court is a pro se motion for compassionate release pursuant to U.S.S.G. § 1B1.13(b)(1)(C) (ECF No. 75) filed by defendant Elijah Winchester ("Winchester"). Winchester submitted exhibits to his motion (ECF No. 75-1), which were removed from public view because they contained his medical records. The government filed a response in opposition to the motion (ECF No. 80) and submitted medical records under seal (ECF No. 81). Winchester filed a supplement (ECF No. 82) and a reply (ECF No. 83). The motion is ripe for disposition.

Procedural History

On February 25, 2020, Winchester pleaded guilty to possession of material depicting the sexual exploitation of a minor on or about May 21, 2018, in violation of 18 U.S.C. § 2252(a)(4)(B).

Pursuant to Local Rule 32C.4, counsel for defendant and for the government each had an opportunity to submit objections to the Presentence Investigation Report ("PIR") prepared by the Probation Office. Neither party raised an objection to the PIR that impacted the court's calculation of the advisory guidelines. The court issued Tentative Findings and Rulings (ECF No. 62), which it adopted at the sentencing hearing (ECF No. 63). Winchester's guideline range would have been 135-168 months in prison, but was capped by the statutory maximum of 120 months.

On June 17, 2020, the court sentenced Winchester to a term of imprisonment of 120 months, to be followed by 7 years of supervised release (ECF No. 66). Winchester did not appeal his conviction or sentence. His anticipated release date is August 26, 2029. https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results.

Discussion

1. Compassionate release vs. 8th Amendment

As an initial matter, the court must clarify the motion it is empowered to address. In his supplement and reply (ECF Nos. 82 and 83), Winchester raised matters concerning the adequacy of his medical care and the conditions of his confinement by the Bureau of Prisons ("BOP"). This court lacks jurisdiction to consider a claim for inadequate medical care under the Eighth Amendment to the United States Constitution. That kind of claim must be presented to the district court for the geographical area in which Winchester is incarcerated. *United States v. Mendoza*, No. CR 06-167, 2021 WL 1312920, at *6 (W.D. Pa. Apr. 8, 2021) (citing *Bruce v. Warden, Lewisburg USP*, 868 F.3d 170, 178 (3d Cir. 2017)). Because Winchester is currently incarcerated at FCI Memphis, he must pursue any challenge his medical care under the Eighth Amendment in the United States District Court for the Western District of Tennessee. In particular, this court will not address Winchester's allegations that: (1) his medical records were altered[1]; (2) the BOP is purposefully not treating him because of the cost of treatment; (3) placing him in segregated housing (i.e., the "SHU") overnight before sending him to an outside consultation constitutes cruel and unusual punishment; or (4) a particular corrections officer has

---

[1] The court notes that Winchester provided no evidence of falsification.

2

complete disregard for inmates' health and safety.

Motions for compassionate release, by contrast, are appropriately directed to the court that imposed the original sentence. 18 U.S.C. § 3582(c). The court acknowledges that U.S.S.G. § 1B1.13(b)(1)(C) (quoted below) authorizes this court to consider the medical care a defendant is receiving while incarcerated. That consideration, however, is limited to whether the medical care constitutes an extraordinary and compelling reason for compassionate release. *See United States v. Taylor*, No. 4:17-CR-9(1), 2024 WL 150221, at *12 (E.D. Tex. Jan. 11, 2024) (citations omitted) (complaints about the quality of medical care are not cognizable via a motion for compassionate release).

2. Compassionate release

In *Dillon v. United States*, 560 U.S. 817, 819 (2010), the Supreme Court explained that "[a] federal court generally may not modify a term of imprisonment once it has been imposed." One specific exception to the finality of sentences is the First Step Act's amendment of 18 U.S.C. § 3582, which provides in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>    (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>       (i) extraordinary and compelling reasons warrant such a reduction;...

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

Effective November 1, 2023, the United States Sentencing Commission amended U.S.S.G. § 1B1.13 (Amendment 814) "by moving four circumstances that could constitute extraordinary and compelling reasons for reduction of sentence from the commentary to the policy statement, and by expanding the list of such circumstances." *United States v. Leroy*, No. CR 16-0243, 2024 WL 1833911, at *3 (W.D. Pa. Apr. 26, 2024). Amendment 814 constitutes an "applicable policy statement[] issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Section 3582(c) mandates that the court consider whether a reduction in Winchester's sentence would be "consistent with" the amended policy statement in U.S.S.G. § 1B1.13. *Id.* at *4.

The Sentencing Commission policy with respect to medical circumstances, § 1B1.13, now provides:

> (b) Extraordinary and Compelling Reasons.--Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>
>   (1) Medical Circumstances of the Defendant.--
>     (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>     (B) The defendant is--
>       (i) suffering from a serious physical or medical condition,
>       (ii) suffering from a serious functional or cognitive impairment, or
>       (iii) experiencing deteriorating physical or mental health because of the aging process,
>     that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>     **(C) The defendant is suffering from a medical condition that requires**

> **long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.**
> (D) The defendant presents the following circumstances--
>   (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>   (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>   (iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13 (emphasis added).

The defendant bears the burden of proof, by a preponderance of the evidence, with respect to a motion for compassionate release brought pursuant to Section 3582(c)(1)(A). *Leroy*, 2024 WL 1833911, at *4 (citing *United States v. Grasha*, Crim. No. 18-325, 2020 WL 5647829, at *2 (W.D. Pa. Sept. 24, 2020)). A defendant must exhaust his administrative remedies by presenting his request to the warden at least 30 days before filing a Section 3582(c)(1)(A) motion with the court. *United States v. Harris*, 812 F. App'x. 106 (3d Cir. 2020).[2] Winchester cites only subsection (b)(1)(C) (in bold above), which requires that he: (1) suffer from a medical condition; (2) that requires long-term or specialized medical care; (3) that is not being provided; and (4) without which the defendant is at risk of serious deterioration in health or death. In any event, there is no evidence in the record that the circumstances in subsections (A) (terminal illness), (B) (diminished ability to provide self-care) or (D) (pandemic) apply to Winchester.

---

[2] The record does not indicate that Winchester exhausted his administrative remedies, but the government did not challenge that requirement. The court will assume, without deciding, that Winchester exhausted his administrative remedies and address his motion on the merits.

Winchester cites the following medical conditions: (1) diabetes (type II); (2) an inguinal hernia; and (3) an undiagnosed mass in his neck. The court will briefly discuss each condition.

1. Diabetes

The medical records provided by Winchester reflect a hemoglobin A1c level of 6.0. Winchester argues these results mean "that the Diabetic treatment is not treating the Diabetes effectively." (ECF No. 75 at 2). The medical records Winchester provided, however, reflect: "For someone with known diabetes, a [A1c] value < 7% indicates that their diabetes is well controlled." (ECF No. 75-1).

The government provided a complete set of Winchester's medical records. A treatment note on July 13, 2023, reflected that Winchester was to take one glucose tab per day "AS NEEDED." (ECF No. 81 at 16). He was instructed "do not take unless needed" and was provided "10 tabs per month." *Id.* A treatment note on August 23, 2023 reflects an A1c value of 6% and comments: "Due to improvement in blood glucose control insulin is no longer indicated. Will [discontinue] insulin and [followup] as scheduled." (ECF No. 81 at 9).

On this record, Winchester did not meet his burden to demonstrate that his diabetes is a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death. To the contrary, it appears that the BOP is providing treatment for his diabetes and that condition is improving.

2. Hernia

Winchester asserts he began complaining about a hernia in 2019 when he was in state

custody and continued to complain about it in federal custody. (ECF No. 75 at 3). A May 2, 2022 examination reported a painful, reducible lump on left groin which was provisionally diagnosed as an inguinal hernia. (ECF No. 81-1 at 50). The government points out that the BOP permits Winchester to have a hernia belt. (ECF No. 81 at 63). An ultrasound was ordered on March 22, 2023, and the findings were "normal." The treatment note reflects: "Normal lymph nodes in the left groin. Otherwise unremarkable exam." (ECF No. 75-1). Winchester asserts, nevertheless, that surgery is medically necessary to repair his hernia. Winchester did not provide a medical opinion about the necessity of surgery.

On this record, Winchester did not meet his burden to demonstrate that his hernia is a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death. To the contrary, it appears that the BOP diagnosed a hernia in 2022 and provided a hernia belt, but the ultrasound test in 2023 showed normal findings. Winchester's personal declaration to the contrary, without any supporting evidence, does not meet his burden.

3. Mass in neck

Winchester is worried that a mass in his neck is cancer, which runs in his family. (ECF No. 75 at 4). He reported the mass in December 2022 and an exam was performed six months later; a 1 cm nodule was noted, with no redness, irritation pus or drainage. (ECF No. 75-1). On March 26, 2024, an ultrasound exam of the mass was performed. The findings disclosed an "area of tissue with central hyperechogenicity. No abnormal internal vascularity." (ECF No. 81 at 88). The examiner noted: "This is consistent with a normal lymph node. No additional mass

lesions or fluid conditions." *Id.*

On this record, Winchester did not meet his burden to demonstrate that the mass in his neck is a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death. To the contrary, it appears that the BOP eventually provided an ultrasound exam of his neck and that exam showed normal findings.

Conclusion

For the reasons set forth above, Winchester did not meet his burden to demonstrate an extraordinary and compelling reason for compassionate release. The court, therefore, does not need to reach the § 3553 factors. The motion for compassionate release pursuant to U.S.S.G. § 1B1.13(b)(1)(C) (ECF No. 75) filed by defendant Elijah Winchester will be denied.

An appropriate order will be entered.

By the court,

Date:  July 11, 2024

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Senior United States District Judge